UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBERT CONYERS JR., )
as Personal Representative of )
the Estate of DAVON GILLIANS, )
 )
  Plaintiff, )
 )
v. )  Case No. 5:22-cv-115-TPB-PRL
 )
OFFICER PERKINS, et al. )
 )
  Defendants. )
_____)

## DEFENDANT PERKINS' MOTION TO DISMISS

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Defendant Perkins ("Defendant Perkins") moves to dismiss the claim amended complaint (*Doc. 3*) on grounds that it fails to state a claim upon which relief can be granted.

## INTRODUCTION

The Plaintiff, Robert Conyers Jr. filed a *Bivens*[1] action on behalf of the estate of Davon Gillians ("Gillians").  According to the Plaintiff's amended complaint, at the time of Gillians' death, he was an inmate at the United States Penitentiary Coleman ("USP Coleman"), located in Sumterville, Florida.  *Docs. 1, 3*.  The Plaintiff alleges that Gillians' death was caused by a series of actions on the part of

---

[1] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

federal corrections officers at USP Coleman.  Doc. *3 at 2-6*.  The Plaintiff asserts that the alleged conduct by the corrections officers ultimately caused Gillians to suffer from cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.  *Id.*, *Counts I-VI*.

In Count II, the Plaintiff alleges that Defendant Perkins violated Gillians' right to be free from cruel and unusual punishment.  The Plaintiff alleges that Defendant Perkins was a correctional officer at USP Coleman at the time of Gillians' death.[2]  *Id. at 2*.  The Plaintiff claims that Defendant Perkins placed Gillians or failed to intervene as others placed him in a restraining chair for a dangerous or prolonged period of time. *Id. at 8-9.*[3]  By doing so, the Plaintiff alleges that Defendant Perkins was deliberately indifferent to Gillians' known medical condition.  *Id.*  The Plaintiff further alleges that Defendant Perkins intentionally withheld water, food, hygiene and medical attention or failed to intervene which increased the risk of serious harm or death to Gillians.  *Id.*  The plaintiff alleges the actions or inactions of Defendant Perkins violated Gillians' Eighth Amendment rights. *Id.*

The Plaintiff's amended complaint suffers from several fatal defects. First, the Plaintiff has sued Defendant Perkins in his official capacity, which is not

---

[2] The complaint is devoid of any allegations of supervisory liability against Defendant Perkins who was a lieutenant at the time of the allegations.

[3] The factual allegations in paragraphs 1-39 of the Amended Complaint don't reference Defendant Perkins.

permitted under *Bivens*.   Second, the amended complaint does not state a cognizable claim for relief under *Bivens*.   In light of the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the judicially created *Bivens* remedy should not be extended to the Plaintiff's claims.   Third, independent of the *Abbasi* opinion and its progeny, the Plaintiff's allegations are insufficient as to Defendant Perkins.   Lastly, Defendant Perkins is entitled to qualified immunity. Consequently, this Court must dismiss the claim against Defendant Perkins, as the Plaintiff has failed to state a claim for which relief can be granted.

## STATEMENT OF FACTS

*Relevant Procedural History*

On March 2, 2022, the Plaintiff filed an amended complaint in this action. *Doc. 3.*

On July 21, 2022, the undersigned counsel was retained by the Department of Justice as private counsel for Defendant Perkins.

On July 26, 2022, the undersigned filed a Notice of Appearance for Defendant Perkins.

On July 27, 2022, Defendant Perkins and another defendant in this matter jointly moved for an extension of time to respond to the Plaintiff's amended complaint. *Doc. 24.* Several other defendants also filed motions for an extension of time to respond to the amended complaint. *Docs. 25, 26, 27, 29.*

On August 3, 2022, the Court granted the aforementioned motions for an extension of time and set a deadline of October 3, 2022 for the defendants to respond to the Plaintiff's amended complaint. *Doc. 30.*

*Factual Allegations*

The Plaintiff's claims stem from a series of events that occurred at USP Coleman between May 16, 2021 and May 19, 2021. *Doc. 3 at 2-6.* All of the defendants in this action are being sued for conduct that occurred while they were in their official capacities as federal employees of the Federal Bureau of Prisons ("BOP"). *Id. at 5-11.* The Plaintiff alleges that on May 16, 2021, Gillians was placed into a restraint chair by federal corrections officers for an unspecified or unknown reason. *Id. at 3.* After a period of time, the officers removed Gillians from the restraint chair and placed him into a cell with another inmate. *Id. at 3.* Gillians and this other inmate started fighting with each other inside the cell. *Id. at 4.* Plaintiff further alleges that after "several minutes of fighting" the corrections officers pepper sprayed Gillians and the other inmate "in an attempt to extract" them from the cell. *Id. at 4.*

Additionally, plaintiff claims that all of the defendants somehow knew that Gillians suffered from a sickle cell disease and that his condition required medication. Id. at 2. The amended complaint states that after Gillians was pepper sprayed, the officers placed him, once again, into a restraint chair, and denied him

medical attention, food, water, and medication.  Id. at 4.  The Plaintiff further asserts that the manner in which the officers used the restraint chair constituted cruel and unusual punishment in violation of Gillians' Eighth Amendment rights. Id. at 4-5.  The Plaintiff claims that the foregoing conduct, which occurred over the course of three days,  led to Gillians' untimely death.

## <u>MEMORANDUM OF LAW</u>

*Legal Standards*

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6).  In assessing legal sufficiency, courts are bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  That is, "a complaint must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

A court must construe the complaint in the light most favorable to the plaintiff and accept as true all the plaintiff's factual allegations. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, a court need not accept as true any legal conclusions alleged in a complaint; "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 557. "Factual allegations

must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)).  Federal Rule of Civil Procedure 8(a)(2) requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

"Under the *Iqbal/Twombly* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a threshold level of factual plausibility before defendants are subjected to the potential rigors (and costs) of the discovery process." *Koren v. Neil*, Case No. 1:21-cv-9, 2022 U.S. Dist. LEXIS 60605 at *8 (S.D. Ohio March 31, 2022) (granting a Rule 12(b)(6) motion to dismiss plaintiff's 1983 excessive force claim against various actors allegedly involved in the inmate's confinement in a restraint chair).  "Discovery, after all, is not meant to allow parties to discover whether a claim in fact exists, but rather to provide a process for gathering evidence to substantiate an already plausibly-stated claim."  *Id.* (citing *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

It is also well settled that the Court "must give a wide range of deference to prison officials acting to preserve discipline and security." *Scroggins v. Davis*, 346 F. App'x 504, 505 (11th Cir. 2009).  Prison guards, who are charged with maintaining order and protecting inmates and staff, may use force when necessary "to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). *See also Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991). Accordingly, courts

6

must balance concerns of an inmate's right to be free from cruel and unusual punishment with a prison official's obligation to ensure a safe and secure institution. *Ort v. White*, 813 F.2d 318, 321-22 (11th Cir. 1987).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bostic v. U.S. Capitol Police*, 644 F. Supp. 2d 106, 111 (D.D.C. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   In the Eleventh Circuit, the courts should appropriately accord "official conduct a presumption of legitimacy." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation and citation omitted).

*Arguments*

A.   *The Court should dismiss the claim against Defendant Perkins as he is being sued solely in his official capacity.*

"The availability of a cause of action against federal officials in their individual capacities for violations of federal constitutional rights was established in *Bivens*[.]" *Crocker v. USP 1 Coleman*, No. 5:20-cv-568, 2022 U.S. Dist. LEXIS 18031, at *3-4 (M.D. Fla. Jan. 6, 2022) (Mendoza, J.).  "*Bivens* claims can be brought against federal officers in their individual capacities only; they do not apply to federal officers acting in their official capacities."   *Id.* at *4 (citing *Corr. Servs. Corp. v.*

*Malesko,* 534 U.S. 61 (2001)).  Thus, where a plaintiff sues a defendant in his official capacity, the plaintiff fails to state a claim upon which relief may be granted.  *Id.*

The allegations in the amended complaint relate solely to Defendant Perkins official function as a correctional officer at the prison.  Thus, the Plaintiff brings suit against Defendant Perkins in his official capacity.  Claims brought under *Bivens*, however, do not "extend to federal officers in their official capacity and are barred by sovereign immunity." *Bevan v. Steele*, 417 Fed. App'x 840, 841 n.3 (11th Cir. 2011) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 483-86 (1994)). To the extent that the Plaintiff brings this action against Defendant Perkins in his official capacity, that claim is barred.

B.   *The Plaintiff fails to state a claim for alleged constitutional violations in light of Abbasi.*

"In *Bivens*, the Supreme Court created a cause of action for money damages against federal employees in their individual capacities for constitutional violations." *Dorman v. Simpson*, 893 F. Supp. 1073, 1078 (N.D. Ga. 1995) (citing *Bivens*, *supra*).  Specifically, the Supreme Court's decision in *Bivens* "concerned an allegedly unconstitutional arrest and search carried out in New York City[.]" *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020).  "The Court subsequently extended *Bivens* to cover two additional constitutional claims: in *Davis v. Passman*, 442 U. S. 228 (1979), a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, 446 U. S. 14 (1980), a federal prisoner's Eighth

Amendment claim for failure to provide adequate medical treatment." *Id.* at 741 (citations omitted). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. "After those decisions, however, the Court changed course." *Hernandez*, 140 S. Ct. at 741. In 2020, the Supreme Court, in *Hernandez*, stated that the " . . . expansion of *Bivens* is 'a disfavored judicial activity,'" and that "if 'the Court's three *Bivens* cases [had] been . . . decided today,' it is doubtful that we would have reached the same result.'" *Id.* at 742-43 (quoting *Abbasi*, 137 S. Ct. at 1848, 1856). The Eleventh Circuit has also held "that the expansion of *Bivens* beyond the three specific contexts [the Supreme Court] has recognized is disfavored." *Johnson v. Burden*, 781 F. App'x 833, 836 (11th Cir. 2019) (citing *Abbasi*, 137 S. Ct. at 1857).

When confronted with a *Bivens* claim, courts should engage in a two-step inquiry. *Vasquez v. Cheatham*, No. 5:21-cv-489-WFJ-PRL, 2021 U.S. Dist. LEXIS 234800, 2021 WL 5826236, at *7-8 (M.D. Fla. Dec. 8, 2021) (Jung, J.). First, a court should determine "whether a case presents a new *Bivens* context," or one that "diff[ers] in a meaningful way from previous *Bivens* cases decided by th[e] Court." *Abbasi*, 137 S. Ct. at 1859 (emphasis added). *See also Hernandez*, 140 S. Ct. at 743. Second, if a court determines a case does present a new context, then the court

should consider whether "special factors" counsel hesitation in extending a damages remedy.  *Abbasi*, 137 S. Ct. at 1857, 1861-62.

       1.    *Plaintiff's allegations arise in a new Bivens context.*

To determine whether the context is new, the test is not simply "whether the asserted constitutional right was at issue in a previous *Bivens* case." *Abbasi*, 137 S. Ct. at 1859; *see also Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) ("Indeed, it is not enough even if 'a plaintiff asserts a violation of the same clause of the same amendment in the same way.'").  Instead, a court must look at the specific claims and factual circumstances and determine whether the facts and circumstances vary from those recognized in the three Supreme Court cases recognizing a *Bivens* remedy.  *See Taylor v. Lockett*, Case No. 5:17-cv-00023-Oc-02PRL, 2019 WL 764023, at *7 (M.D. Fla. Feb. 21, 2019) (Jung, J.) ("Although the Supreme Court extended the *Bivens* remedy to an Eighth Amendment claim in the context of a claim based on the failure to provide adequate medical treatment in *Carlson* . . ., the facts of *Carlson* differ meaningfully from the facts of Plaintiff's Eighth Amendment claim."); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017) (refusing to extend the Eighth Amendment in the context of a non-medical claim, noting "we are very far from the facts of *Carlson*.").

Additionally, when determining if the case presents a new *Bivens* context, a court should keep in mind that "even a modest extension is still an extension." *Abbasi*, 137 S. Ct. at 1864.

Here, the Plaintiff seeks to extend *Bivens* to a new context.  Specifically, the Plaintiff alleges that Defendant Perkins violated Gillians' Eighth Amendment rights by placing Gillians or failing to intervene as others placed him in a restraining chair for a dangerous or prolonged period of time with the knowledge he had a medical condition. The Plaintiff further alleges that Defendant Perkins intentionally withheld water, food, hygiene and medical attention or failed to intervene which increased the risk of serious harm or death to Gillians.

The Supreme Court has not expressly approved of an implied damages remedy under *Bivens* for Eighth Amendment excessive force claims or claims related to conditions of confinement.  *See Crocker*, 2022 U.S. Dist. LEXIS 18031 at *16; *see also Mammana v. Barben*, 856 F. App'x 411 (3d Cir. 2021) (rejecting prisoner's argument that *Carlson* gives footing to Eighth Amendment conditions-of-confinement claim against federal prison officials); *Brown v. Nash*, No. 3:18-CV-528, 2019 U.S. Dist. LEXIS 224719, 2019 WL 7562785, at *4-6 (S.D. Miss. Dec. 13, 2019) (concluding that *Bivens* did not extend to inmate's Eight Amendment claim of excessive force, noting, *inter alia*, that concerns of institutional security counseled hesitation), report and recommendation adopted, 2020 U.S. Dist. LEXIS

4332, 2020 WL 129101 (Jan. 10, 2020); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169-70 (E.D. Cal. Oct. 1, 2018) (declining to extend *Bivens* to an inmate's Eighth Amendment claim of excessive force, noting that "Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim"); *Hill v. Lappin*, *et al.*, No. 3:11-CV-1609, 2021 U.S. Dist. LEXIS 103139, 2021 WL 2222725, at *4 (M.D. Pa. June 2, 2021) (finding plaintiff's Eighth Amendment claim that "defendants subjected him to cruel and unusual punishment by placing him in four-point restraints and by not releasing him from the restraints to use the toilet during a 43-hour period, purportedly forcing him to lie in his own waste" was a new context and that "special factors weigh decisively against extending *Bivens* to this new context."); *Blakey v. Pistro*, No. 2:21-CV-572-JDW, 2021 U.S. Dist. LEXIS 106023, 2021 WL 2312647, at *3 (E.D. Pa. June 7, 2021) (finding that an inmate's Eighth Amendment claim arising from his cell conditions, delays in the provision of medical care, and his contracting COVID-19 arose in a new *Bivens* context and were therefore dismissed); *Hanson v. United States*, Civ. A. No. 18-cv-17, 2018 WL 5046067, at *2 (E.D. Ky. Oct. 17, 2018) (claim based on denial of access to toilet was sufficiently distinct from all three of the prior *Bivens* contexts, and, therefore, was a "new context" for purposes of a *Bivens* analysis).

Moreover, while it is true that the Supreme Court in *Carlson* extended the *Bivens* remedy to an Eighth Amendment claim for failure to provide an inmate

with adequate medical treatment, this Court should decline to extent *Bivens* in the instant case because "the facts of *Carlson* differ meaningfully from the facts of Plaintiff's Eighth Amendment claim." *See Taylor*, 2019 WL 764023, at *7; *Gonzalez*, 269 F. Supp. 3d at 64.

In *Carlson*, an inmate's estate brought suit alleging that prison officials had been fully aware of the inmate's serious "chronic asthmatic condition" as well as the "gross inadequacy" of medical facilities and personnel at the Federal Correctional Center in Terre Haute, Indiana.  *See* Carlson, 446 U.S. at 16 n.1.

Here, the plaintiff fails to allege that there were gross medical inadequacies at USP Coleman.  In fact, none of the defendants named in the Plaintiff's amended complaint worked as medical personnel at USP Coleman.  Thus, the Plaintiff's claims differ meaningfully from *Carlson*, the case where the Supreme Court extended *Bivens* to an Eighth Amendment violation.

> 2. *Special factors counseling hesitation extending Bivens to this new context.*

Because this case involves a new context, the court must consider whether "special factors" counsel against recognizing a *Bivens* remedy.  The Supreme Court "has not defined the phrase 'special factors counselling hesitation.'"  *Abbasi*, 137 S. Ct. at 1865.  However, "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages

action to proceed." *Id.* at 1857-58.  Thus, a "special factor" is one that "cause[s] a court to hesitate before answering that question in the affirmative."  *Id.* at 1858.

One such "special factor" that may counsel hesitation is "the availability of alternative remedies to address the alleged harm."  *See Wallace v. Bailey*, No. 5:20-cv-421-BJD-PRL, 2020 U.S. Dist. LEXIS 227019, 2020 WL 7074573, at *2 (M.D. Fla. Dec. 3, 2020) (Davis, J.) (citing *Abbasi*, 137 S. Ct. at 1858)*; see also Johnson v. Burden*, 781 F. App'x 833, 836 (11th Cir. 2019) ("The availability of alternative means of relief may alone limit the power of courts to 'infer a new *Bivens* cause of action.'" (quoting *Abbasi*, 137 S. Ct. at 1858)); *McRae v. Lockett*, No. 5:17-cv-299-WFJ-PRL, 2019 U.S. Dist. LEXIS 90235, 2019 WL 2303264, at *5 (M.D. Fla. May 30, 2019) (Jung, J.) ("If there is an alternative remedial structure, that alone may prevent extending the *Bivens* remedy."); *Vasquez*, 2021 U.S. Dist. LEXIS 234800, 2021 WL 5826236, at * 4-5 ("[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action.") (quoting *Abbasi*, 137 S. Ct. at 1865).

Relying on the foregoing reasoning, several courts in this district have dismissed *Bivens* actions for failure to state a claim upon which relief may be granted, based, in part, on the fact that Plaintiffs have an alternative remedy available to address their claims.  *See e.g. Crocker*, No. 5:20-cv-568, 2022 U.S. Dist. LEXIS 18031 at *11-12 (declining to extend a damages remedy in an excessive force case because the facts were different than those in *Carlson*, and the prisoner had

14

alternative means to seek redress, including through the BOP's grievance procedure and an action against the United States under the Federal Tort Claims Act ("FTCA")); *Vasquez*, 2021 U.S. Dist. LEXIS 234800, 2021 WL 5826236, at *4-5 (dismissing a plaintiff's excessive force claim because it presented a new context and special factors, i.e., the plaintiff's ability to raise a claim through the Prison Litigation Reform Act of 1995, counseled hesitation in extending a *Bivens* remedy); *Taylor*, 2019 U.S. Dist. LEXIS 27507, 2019 WL 764023, at *6-7, 9 (granting defendants motion to dismiss a federal inmate's *Bivens* claim where inmate had alternative remedies available); *McRae*, 2019 U.S. Dist. LEXIS 90235, at *15 (same).

Here, the Plaintiff had an alternative remedy, which counsels hesitation in extending *Bivens* to the claims raised by the Plaintiff. Specifically, the Plaintiff could have sued the United States under the FTCA, which permits causes of action "for personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (emphasis added); *see also* 28 USCS § 2679. In Florida, a deceased's estate may sue the federal government under the FTCA for a wrongful death that occurred as a result of conduct by federal employees. *See e.g. Morgan v. United States*, Case No. 99-CV-2738-T-30A, 2000 U.S.

Dist. LEXIS 23273, at *2-6 (M.D. Fla. Dec. 13, 2000) (Moody, J.) (A personal representative of a decedent filed a wrongful death action against the United States alleging negligence on the part of Federal Aviation Administration personnel, and decedent's parents were later permitted to intervene, based on the court's interpretation of Florida law.); *Estate of McCall ex rel. McCall v. United States*, 642 F.3d 944, 947-948 (11th Cir. 2011) (The estate of a decedent successfully sued the United States under the FTCA based on negligence of Air Force medical personnel, which proximately caused the decedent's death); *see also Millbrook v. United States*, 569 U.S. 50, 57 (2013) (holding that the FTCA extends to intentional torts committed by law enforcement officials where the alleged conduct "arise[s] within the scope of their employment").

The alternative remedies available to the Plaintiff "need not be perfectly congruent" to preclude a *Bivens* remedy. *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) (declining to create a *Bivens* remedy even though existing alternative remedies "were not as effective as an individual damages remedy and did not fully compensate [plaintiff] for the harm he suffered" (footnote omitted)); *Schweiker v. Chilicky*, 487 U.S. 412, 424-25 (1988) (holding that a *Bivens* action was precluded by remedies that did not provide for "money damages against officials responsible for unconstitutional conduct"). Thus, "[t]hat the FTCA might not give [the

Plaintiff here] everything he seeks is therefore no reason to extend *Bivens*." *Oliva*, 973 F.3d at 444 (citing *Hernandez*, 140 S. Ct. at 750).

Because the Plaintiff's claims arise in a new *Bivens* context and an alternative remedy exists, this Court should find that the Plaintiff has failed to state a *Bivens* claim upon which relief can be granted as to Defendant Perkins.

     C.    *The Plaintiff's allegations are otherwise insufficient.*

Even if *Abassi* and its progeny did not exist, the Plaintiff's claim against Defendant Perkins would still be facially insufficient. To establish a defendant's deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Jackson v. West*, 787 F.3d 1345, 1353 (11th Cir. 2015) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *see also Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). Even when officials fail to remedy "an obvious risk of which they should have known but did not," that does not amount to deliberate indifference. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005). Instead, "an official must act with a state of mind akin to criminal recklessness in response to a known risk, given the information available during the incident, in order to exhibit deliberate indifference and thus violate the Constitution." *Howell v. NaphCare, Inc.*, No. 1:19-cv-373, 2021 U.S. Dist. LEXIS 211206, 2021 WL 5083726, at *12 (S.D. Ohio Nov. 2, 2021) (emphasis added). The

Plaintiff's allegations against Defendant Perkins fall well short of establishing deliberate indifference on his part.

Second, in order for a postconviction inmate to demonstrate "cruel and unusual punishment" in violation of the Eighth Amendment, the convicted inmate must show that officers used force ". . . maliciously and sadistically for the very purpose of causing harm." *Miles v. Jackson*, 757 F. App'x 828, 829 (11th Cir. 2018) (citations omitted) (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999)) (emphasis added).  Here, Gillians was a convicted inmate, and the Plaintiff must demonstrate that force was "maliciously and sadistically" used against Gillians "for the very purpose of causing harm."  *Id.*   The Plaintiff's allegations fail to do that.

D.   *Defendant Perkins is entitled to qualified immunity.*

Even if the Plaintiff's claims survive the above-described arguments, Defendant Perkins is entitled to qualified immunity.  It is well established that under the qualified immunity doctrine government agents are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (emphasis added). "The privilege is an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quotation and citation omitted).

Qualified immunity protects government agents because individual capacity suits "can entail substantial social costs, including  the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To minimize those social costs, qualified immunity should apply "at the earliest possible stage of litigation." *Saucier*, 533 U.S. at 201 (quotation and citation omitted).  If a complaint fails to state a claim sufficient to overcome qualified immunity, then the court should dismiss the action under Rule 12(b)(6) at the outset, without allowing discovery. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The threshold inquiry as it relates to Defendant Perkins' entitlement to qualified immunity is "whether plaintiff's allegations, if true, establish a constitutional violation."  *Hope*, 536 U.S. at 736; *see also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007) (a court "should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right.").  For the reasons stated above, the

Plaintiff has failed to plead allegations, which if true, establish that Defendant Perkins violated Gillians' constitutional rights.

While there are no specific allegations that Defendant Perkins administered chemical agents, the Eleventh Circuit has held that their use by prison officials does not amount to cruel and unusual punishment under the Eighth Amendment. *See Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) ("[p]epper spray is an accepted non-lethal means of controlling unruly inmates"), overruled on other grounds as recognized by *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Scroggins*, 346 F. App'x at 505 (holding that "use of one burst of oleoresin capsicum (O.C.) spray against [the inmate-plaintiff after his failure to obey a direct order and engagement in a scuffle with guards] was not excessive force."). Stated another way, the Eleventh Circuit has recognized chemical agents as an acceptable non-lethal use of force so long as valid penological reason supports such force. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1264 (11th Cir. 2020); *Thomas v. Bryant*, 614 F.3d 1288, 1301-11 (11th Cir. 2010); *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008), overruled on other grounds as recognized in *Randall*, 610 F.3d at 709-10.

The Eleventh Circuit has also found that placing an inmate in restraints following the inmate's outbursts, noncompliance, and physical resistance—does not constitute excessive force. *Scroggins*, 346 F. App'x at 505 (11th Cir. 2009) (finding no excessive force where an inmate was placed in a restraint chair for

three hours and fifteen minutes); *Williams*, 943 F.2d at 1576 (rejecting claim that putting a dangerous inmate in a four-point restraint for twenty-eight and one-half hours was excessive force and explaining "the courts give great deference to the actions of prison officials in applying prophylactic or preventative measures intended to reduce the incidence of riots and other breaches of prison discipline"). "How long restraint may be continued calls for the exercise of good judgment on the part of prison officials," and courts are to give "great deference" to prison officials in making that call. *Id.*

Based on the foregoing, it is clear that the Plaintiff has not (and cannot) allege that Defendant Perkins, violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citation omitted). Thus, Defendant Perkins is entitled to qualified immunity and this Court should dismiss the Plaintiff's action under Rule 12(b)(6), without allowing discovery. *See Mitchell*, 472 U.S. at 526.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant Perkins' Motion to Dismiss. Further, Defendant Perkins requests that the dismissal be with

prejudice as any further amendment as to him "would be futile" based on the arguments raised herein.  *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (a district court need not allow amendment "where amendment would be futile.").

> */s/ Dan Eckhart,*
> **Dan Eckhart, ESQ.**
> Florida Bar No. 488674
> **Dan Eckhart Law**
> 200 East Robinson Street, Suite 1150
> Orlando, Florida 32801
> Telephone: 407-276-0500
> Email: dan@daneckhartlaw.com
> Attorney for Defendant Perkins

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel in this case on September 20, 2022.

> */s/ Dan Eckhart*
> **Dan Eckhart, Esq.**