UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Case No. 5:22-CV-115

ROBERT CONYERS JR., as Personal Representative
of the Estate of DAVON GILLIANS,

    Plaintiff,

v.

BRYAN ANTONELLI, OFFICER AYERS,
OFFICER PERKINS, OFFICER MOREY,
OFFICER KITCHEN, and
OFFICER KIRKENALL,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT PERKINS' MOTION TO DISMISS**

## I.    INTRODUCTION

Plaintiff, Robert Conyers, is the surviving father of Davon Gillians and Personal Representative of his Estate. Mr. Gillians was 22 years old and imprisoned at United States Penitentiary Coleman and was scheduled to be released in the year 2022. He suffered from sickle cell disease which required medication. Unfortunately, he died on May 19, 2021. Mr. Gillians' death was deemed a "homicide" and the medical examiner determined that the cause of death was a vaso-occlusive crisis, which is a known complication of sickle cell disease. She further determined that the death was also caused by Mr. Gillians' sickle cell disease complicating the use of prolonged restraint.

In the two days leading up to his death, Mr. Gillians was placed in a restraint chair for over 40 hours; he was then placed in a cell with another inmate for the purpose of starting a fight; and he was then placed back into the restraint chair for several more hours before being rushed to a local emergency room where he was pronounced dead. During his prolonged restraint, his

1

condition deteriorated, he was denied his medication, and he was struggling to breathe. The Defendants, however, deprived him of much needed medical attention which caused his death. This suit followed.

## II.     FACTS

Davon Gillians was just 22 years old and suffering from sickle cell disease when he was placed in a restraint chair for two days and denied medication and medical care, causing his death. Plaintiff's Amended Complaint alleges that on or about May 16, 2021 Mr. Gillians was punched and choked before ultimately being placed in a restraint chair for 24-48 hours. Am. Compl. at ¶¶ 14-16. After nearly two days in the restraint chair, Mr. Gillians was removed and escorted to another cell that was not his assigned cell. *Id*. at ¶ 18. The inmate in that cell, "Cleveland" was in a single cell due to mental health issues and a propensity for violence. *Id*. at ¶ 19. Mr. Gillians was placed in that cell as a punitive measure and for the purpose of inciting violence between the two. *Id*. at ¶¶ 19-21. This practice was customary at Coleman in order to punish certain inmates. *Id.* Mr. Gillians and inmate Cleveland began fighting and corrections officers allowed that fight to persist to ensure that Mr. Gillians would be injured. *Id*. at ¶ 23. Several officers then used large amounts of pepper spray to extract Mr. Gillians from the cell and he was placed back in the restraint chair. *Id*. at ¶¶ 22-27.

As a result of that incident, Mr. Gillians was in clear medical distress. *Id.* He was again placed in the restraint chair for an extended period of time and denied medical attention despite his deteriorating condition. *Id*. at ¶ 28. His condition worsened and he was pleading for help, stating that he could not feel his legs and was concerned he would die. *Id*. at ¶ 33. Nonetheless, he was denied medical attention and kept in the restraint chair. *Id*. at ¶ 34. In the late hours of May 18, 2021 or early hours of May 19, 2021, while still in the restraint chair, Mr. Gillians suffered

a further decline and was rushed to a local emergency room. *Id*. at ¶ 35. Soon thereafter he was pronounced dead and the medical examiner determined his death to be a "homicide." *Id*. at ¶ 37. The medical examiner also determined that the cause of death was a vaso-occlusive crisis. *Id*.

With respect to Defendant Perkins, Plaintiff alleges that he knew Mr. Gillians suffered from sickle cell. *Id*. at ¶¶ 13, 51. Plaintiff further alleges that Defendant Perkins placed Mr. Gillians in the restraint chair for a dangerous and prolonged period of time despite his deteriorating medical condition and injuries, and withheld from Mr. Gillians adequate food, water, hygiene and medical attention. *Id*. at ¶ 53-54. And Plaintiff alleges this conduct was a direct and proximate cause of Mr. Gillians' death. *Id*. at ¶ 55. Accordingly, Plaintiff alleges that he is personally liable for the violations of Mr. Gillians' constitutional rights.[1]

### III.   LEGAL STANDARD

Defendant Perkins moved to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court must accept the Amended Complaint's allegations as true and construe them in the light most favorable to the Plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d 133, 1335 (11th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal

---

[1] Since filing the Amended Complaint Plaintiff has learned additional facts, which, if the Court finds necessary, can be pled should the Court grant Defendant's motion with leave to amend. For example, a former high-level prison official has come forward and advised that the use of the restraint chair at Coleman was part of a "pilot program" and restricted to only one part of the prison. Plaintiff has also learned that when Mr. Gillians was placed in the restraint chair for a second time (after a 40+ hour stint) he was having significant difficulty breathing and his vital signs were abnormal. Despite this, and his sickle cell condition, Mr. Gillians was placed in the restraint chair and denied medical attention for several hours before he suffered an arrest. Apparently, this is depicted on surveillance video, which has not yet been produced.

quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. DEFENDANT'S MOTION SHOULD BE DENIED

Plaintiff filed suit alleging claims under *Bivens*[2] for the violation of his son's constitutional rights, which caused his death. Defendant Perkins' motion argues dismissal is warranted because 1) he cannot be sued in his official capacity; 2) Plaintiff's claims are impermissible under *Bivens*; and 3) he is entitled to qualified immunity.

The motion should be denied because Plaintiff's claims are being brought against Defendant Perkins in his individual capacity and are permissible under *Bivens*. Additionally, the facts alleged in the Amended Complaint demonstrate that he is not entitled to qualified immunity.

### A. Plaintiff's Claims Are Being Brought Against All Defendants in their Individual Capacities

Defendant states that Plaintiffs' allegations "relate solely to Defendant Perkins' official function as a warden at the prison" and therefore must be dismissed. Def. Mot. at 8. Plaintiff's Amended Complaint, however, does not allege that the claims being brought against Defendant Perkins (and the other individual defendants) are in their official capacity. Rather, Plaintiff is suing Defendant Perkins (and all Defendants) in his individual capacity for violations of Mr. Gillians' constitutional rights. *See* Am. Compl. at ¶ 50. ("Defendant Perkins . . . is liable personally for this violation."). Therefore, dismissal is not appropriate. *See Nails v. Coleman Low Federal Institute*, 307 F. App'x 296, 298 (11th Cir. 2009) (reversing summary judgment explaining trial

---

[2] *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

court failed to "liberally construe [plaintiff's] complaint in his favor when it read the complaint to be a *Bivens* action against federal officials in their official capacities.").

### B. Plaintiff Sufficiently Pled a *Bivens* Claim Against Defendant Perkins

Defendant Perkins claims Plaintiff's case must be dismissed because the Amended Complaint alleges "a new *Bivens* context." Def. Mot., 10. Respectfully, that contention is wrong. Defendant Perkins motion acknowledges that in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court extended *Bivens* to cover constitutional claims related to the failure to provide adequate medical treatment. Def. Mot. at 9-10. Here, Plaintiff's Amended Complaint alleges such a claim and does not fall within a new *Bivens* context.

In *Bivens*, the Supreme Court recognized a violation of an individual's Fourth Amendment right "gives rise to a cause of action for damages" against the offending federal officers. 403 U.S. at 389. Following *Bivens*, the Court recognized an implied cause of action in two other contexts. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court held the Fifth Amendment Due Process clause gave rise to a damages claim for gender discrimination in the workplace. And in *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment Cruel and Unusual Punishment Clause allowed a prisoner's estate to bring a claim against federal jailers for failing to provide the prisoner with adequate medical treatment. Outside of those three contexts, the Court instructed lower courts to exercise "caution before extending *Bivens* remedies into any new context. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). As a result, courts reviewing *Bivens* claims "engage in a two-step inquiry." *Cauthen v. Blackmon*, No. 5:20-cv-371-BJD-PRL, 2022 WL 952733 *3 (M.D. Fla. Mar. 30, 2022). First the Court determines "whether the case presents a new *Bivens* context or one that differs in a meaningful way from previous *Bivens* cases decided by the Court." *Id*. (quoting *Ziglar*, 137 S. Ct. at 1859). If not, that ends the inquiry. If, however,

5

the case does present a new context, the Court considers "where 'special factors' counsel hesitation in extending a damages remedy." *Id*.

Plaintiff's claims do not present a new *Bivens* context because they are based upon the Defendants' deprivation of Mr. Gillians' right to adequate medical attention. Defendant Perkins, however, attempts to couch Plaintiff's claims as being for solely excessive force and unsafe conditions of confinement. Def. Mot at 11.[3] This argument ignores the extensive allegations pertaining to Mr. Gillians' sickle cell disease, the denial of his medication, and his deteriorating medical condition, which went ignored, and which was exacerbated by the Defendants' actions.

Plaintiff's Amended Complaint makes clear that Mr. Gillians suffered from sickle cell disease requiring medication and that this was known by all Defendants. Am. Compl. at ¶¶ 12-13. Plaintiff further alleges that Mr. Gillians remained in a restraint chair while being denied food, water and medication; was later removed for purposes of inciting a fight between Mr. Gillians and another inmate; and after that fight, Mr. Gillians was placed back in the restraint chair despite being in clear medical distress. *Id*. at ¶¶ 17-27. Mr. Gillians was once again denied medical attention despite his deteriorating condition. *Id*. at ¶ 28. Ultimately, hours after being placed back in the restraint chair, Mr. Gillians suffered a further decline in his medical condition and was

---

[3] While the Amended Complaint certainly details horrific and unsafe conditions and a depraved use of excessive force, that of course is only *part* of the allegations. The Defendants certainly helped create the very medical emergency that they ignored and deprived Mr. Gillians of necessary medical attention. That component of the case—ignoring Mr. Gillians' medical needs—is what Defendant Perkins ignores. Nonetheless, even if Plaintiff's claims were solely for excessive force (which they are not) they would still not present a new *Bivens* context. *E.g. Cauthen,* 2022 WL 952733 at *4 (finding Plaintiff's excessive force claim does not present a new *Bivens* context); *Rivera v. Lebron*, No. 5:15-cv-317-RBD-PRL (M.D. Fla. Oct. 29, 2021) (finding Plaintiff's excessive force claim, that sought damages based on the Eighth Amendment's proscription of prisoner mistreatment in federal custody, was not meaningfully different from *Carlson*); *Reid v. United States*,825 F. App'x 442, 444 (9th Cir. 2020) (concluding that *Bivens* includes an implied right of action for Eighth Amendment excessive force violations); *see also Farmer*, 511 U.S. at 834-45.

rushed to an emergency room where he was pronounced dead. Plaintiff's Amended Complaint alleges that Mr. Gillians died as a result of the Defendant Perkins' withholding of medical treatment. *Id*. at ¶¶ 53, 55. The Amended Complaint further alleges that Mr. Gillians' death was determined to be a homicide, caused by a vaso-occlusive crisis, which is a known complication of sickle cell, exacerbated by prolonged restraint and use of pepper spray. *Id*. at ¶ 37. That Plaintiff alleges Defendant Perkins' conduct created the need for medical attention does not change the fact that Plaintiff is alleging the Defendants deprived Mr. Gillians of that medical attention, giving rise to a claim under *Bivens* and *Carlson*.

In *Carlson*, the Supreme Court recognized a prisoner's death due to federal officers failing to treat his asthma gave rise to a *Bivens* claim. Here, Plaintiff is claiming the Defendants caused, and failed to provide treatment for, Mr. Gillians' sickle cell crisis. Therefore, Plaintiff's claim does not present a new *Bivens* context. Meanwhile, Defendant Perkins strains to distinguish this case from *Carlson*. First, he argues that "[P]laintiff fails to allege that there were gross medical inadequacies at USP Coleman." Def. Mot. at 13. That of course, is not true. Plaintiff's Amended Complaint alleges that the Coleman officers placed an inmate with a serious medical condition in a restraint chair for nearly two days, incited violence between he and another inmate, placed him back in the restraint chair and denied him food, water, medication, and medical attention all the while his condition was deteriorating leading up to his death. *See* Am. Compl., at ¶¶ 32-33, 52-53. Certainly, those allegations suggest "gross medical inadequacies" on the part of the Defendants.

And second, Defendant Perkins attempts to distinguish *Carlson* by pointing out the Defendants here are not medical personnel. There is no requirement, however, that the defendants be medical personnel in order to be held accountable for failing to provide medical treatment. *E.g*.

7

*Cauthen*, 2022 WL 952733 at *1 (denying motions to dismiss *Bivens* claims filed by lieutenant and two officers). One need not be a medical professional to be indifferent to an inmate's medical needs. In fact, the Eleventh Circuit has explained that a deliberate indifference to a serious medical need may be shown where one's medical need is "so obvious even a **lay person** would easily recognize the necessity for a doctor's attention." *See McNeeley v. Wilson*, 649 F. App'x 717 (11th Cir. 2016) (emphasis added). Plaintiff's allegations demonstrate that all Defendants, including Defendant Perkins, were deliberately indifferent to Mr. Gillian's serious medical needs, which is not a new *Bivens* context.

The cases relied upon by Defendant Perkins in an attempt to distinguish this case from *Carlson* do not support dismissal. For example, in *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017), the plaintiff's Eighth Amendment claims were related to denial of recreation time, the provision of dirty or used clothing and dirty or used razors, and the lack of adequate dental supplies and laced shoes. The plaintiff asserted that those issues led to dental issues and a knee injury subsequent to his release. *Id*. That is a far cry from *Carlson* and the allegations here. And in *Taylor v. Lockett*, No. 5:17-cv-00023-OC-02PRL, 2019 WL 764023 (M.D. Fla. Feb. 21, 2019), the plaintiff's Eighth Amendment claim was for the inappropriate use of a metal detector wand, which the plaintiff alleged was "violating him sexually." That too is not analogous to the facts before this Court.

Given that Plaintiff's claims do not present a new *Bivens* context, there is no need to address whether any "special factors" caution against extending a damages remedy to this case. Nonetheless, because Defendant Perkins motion raises the issue, Plaintiff will address it here. The only "special factor" that Defendant Perkins argues as a basis for dismissal is the alleged availability of an alternative remedy because Plaintiff could have sued the United States rather

8

than the individual defendants. Def. Mot., at 16. This argument, however, is directly contradicted by the Supreme Court's decision in *Carlson*.

The Court in *Carlson* made clear that a *Bivens* action could be defeated where "Congress has provided an alternative remedy which is explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." 446 U.S. at 18-19 (emphasis in original). However, the Court set forth several reasons why the FTCA was not such an acceptable substitute. First, *Bivens* serves as a deterrent. *Id*. at 21. Second, the availability of punitive damages demonstrates that an FTCA claim "is that much less effective than a *Bivens* action as a deterrent to unconstitutional acts." And third, the FTCA does not provide for a jury trial as *Bivens* does and there is no reason why the Plaintiff "should not retain the choice." *Id*. at 22-23 ("Plainly FTCA is not a sufficient protector of the citizens; constitutional rights, and without a clear congressional mandate we cannot hold that Congress relegated [plaintiff] exclusively to the FTCA remedy."). *See also Cauthen*, 2022 WL 952733 at *5-6. Accordingly, there is no "special factor" that would preclude a damages remedy for the claims alleged in Plaintiff's Amended Complaint.

Defendant Perkins also suggests that Plaintiff's allegations do not demonstrate a deliberate indifference. However, as explained above, the Amended Complaint details the use of the restraint chair as a form of punishment and a means to carry out retribution. Am. Compl. at ¶ 29. Plaintiff alleges that Defendant Perkins intentionally placed Mr. Gillians in the restraint chair for a prolonged period of time despite his deteriorating medical condition and intentionally withheld medical attention. *Id*. at ¶¶ 52-54. These allegations meet the requisite elements to demonstrate deliberate indifference. *See Farmer*, 511 U.S. at 842-43 (deliberate indifference can be shown where prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm.").

9

### D. Defendant Perkins is Not Entitled to Qualified Immunity

Defendant Perkins also claims dismissal is warranted because he is entitled to qualified immunity. The Amended Complaint, however, alleges facts that show Defendant Perkins' conduct constituted a violation of a clearly established constitutional right. Therefore, he is not entitled to qualified immunity.

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). To assert a qualified immunity defense, defendants must first demonstrate they were acting in their discretionary authority. *Id*. If so, the plaintiff must then demonstrate that 1) defendants violated a constitutional right and 2) the right was clearly established at the time of the violation. *Id*.; *see also Cauthen*, 2002 WL 952733 at *7.

"It is clearly established that prison officials who show deliberate indifference to an inmate's serious medical needs violate the Eighth Amendment." *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990) (reversing dismissal of *Bivens* claim). Here, that is precisely what Plaintiff has alleged and those facts are discussed in detail above. Therefore, Defendant Perkins is not entitled to qualified immunity.

Defendant relies upon a number of cases, almost none of which involved a motion to dismiss. Defendant also cites to cases involving the use of restraint chairs and pepper spray. Those cases, however, do not support Defendant's claim of qualified immunity. For example, in *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008) the Court affirmed denial of a motion to dismiss and found

the defendants were **not** entitled to qualified immunity where a detainee was pepper sprayed and was not permitted to decontaminate himself and see the jail nurse.

In *Scorggins v. Davis*, 346 F. App'x 504 (11th Cir. 2009), also cited by the Defendant, an inmate with a history of prior escape failed to obey an order and scuffled with guards. He later claimed his ribs were broken though he never sought medical treatment. *Id*. at 505. In that case, the Court determined the use of pepper spray and a restraint chair for three hours and fifteen minutes was not excessive force. *Id*. There were seemingly no allegations that the plaintiff suffered from a disease making the restraint chair deadly or that corrections officers were deliberately indifferent to a deteriorating condition and denied him medical attention. *Id*. The plaintiff in that case actually conceded that his jailers were unaware of any discomfort he was suffering from. *Id*. at 506. That is a far cry from Plaintiff's detailed allegations in this case.

The other cases relied upon by Defendant Perkins are also inapposite. For example, *Sconiers v. Lockhart*, 946 F.3d 1256 (11th Cir. 2020) did not discuss qualified immunity at all. Moreover, in that case the Eleventh Circuit partially reversed summary judgment in favor of corrections officers finding the trial court improperly concluded that an officer had a valid reason for using pepper spray against an inmate.

Defendant also cites *Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2008) for the proposition that pepper spray can be used so long as there is a valid penological reason supporting its use. *Thomas* also did not discuss qualified immunity. And in that case that Eleventh Circuit affirmed a district court's declaratory judgment in favor of the prisoner on his Eighth Amendment claims and its entering of an injunction against the defendants. Certainly, that case does not support Defendant Perkins being provided with qualified immunity here.

11

Defendant's citation to *Williams v. Burton*, 943 F.2d 1572 (11th Cir. 1991) is also unavailing. First, that case was not decided on a motion to dismiss; much discovery appears to have been taken prior to judgment being entered in favor of the defendant. Second, though that case involved a prolonged use of a four-point restraint, the Court also found that the evidence demonstrated "adequate precautions were taken to safeguard the prisoner's well-being through constant monitoring and examinations by medical personnel." *Id*. at 1575. That is the opposite of what Plaintiff is alleging here. The Court also recognized that though measures like restraint may be necessary, they also give rise to an Eighth Amendment claim when used to inflict unnecessary pain and suffering and for the purpose of causing harm—which is what Plaintiff alleges here. *See id*. at 1575. Specifically, once there is evidence in the record, Courts look to the need for force and the relationship between the amount of force used and the extent of injury inflicted. *Id*. Certainly here, Plaintiff is eager to learn what evidence would ever justify placing a man suffering from sickle cell disease in a restraint chair for nearly two days and depriving him of access to food, water, medication, and medical attention once his condition deteriorated.

And finally, Defendant also relies upon *Youmans v. Gagnon*, 626 F.3d 557 (11th Cir. 2010) in support of his qualified immunity argument. That opinion involved a motion for summary judgment—not a motion to dismiss. The plaintiff alleged that he suffered cuts and abrasions and was denied adequate medical attention in violation of his constitutional rights. The trial court denied summary judgment and the Eleventh Circuit reversed explaining that a four-hour delay in treatment for cuts (which were not actively bleeding and did not require stitches) was not a violation of a clearly established right. That case bears no resemblance to the facts alleged here.

Defendant cannot demonstrate his entitlement to qualified immunity. Plaintiff's allegations demonstrate that Defendants, including Perkins, violated a clearly established

12

constitutional right. *See Powell*, 914 F.2d at 1463 (allegations that defendants knew plaintiff's cell presented a health danger due to asbestos, but refused to move him constituted indifference to serious medical needs and defeated claims of qualified immunity).

## V. CONCLUSION

Defendant's motion should be denied. Plaintiff sufficiently pled claims against Defendant Perkins in his individual capacity. The claims do not present a new *Bivens* context and sufficiently plead Defendant Perkins' deliberate indifference. The allegations also show that Mr. Gillians' constitutional rights were violated and that those rights were clearly established. Therefore, Defendant Perkins is not entitled to qualified immunity. Accordingly, the motion should be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic transmission to the parties registered on the CM/ECF system on the date this document was filed with the Court.

*PLEASE NOTE: For verification of the date of service, please check the docket entry for this document.*

> STEWART TILGHMAN FOX BIANCHI & CAIN, P.A.
> Attorneys for Plaintiffs
> One Southeast Third Avenue
> Suite 3000
> Miami, FL 33131
> (305) 358-6644 – Telephone
> (305) 358-4707 – Facsimile
>
> By: MICHAEL E. LEVINE
> Florida Bar No. 107363
> mlevine@stfblaw.com
> yparron@stfblaw.com
>
> MARK A. PEPER
> *Admitted Pro Hac Vice*