UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**ROBERT CONYERS, JR.**, as personal representative of the estate of Davon Gillians

    **Plaintiff,**

v.                                                              Case No: 5:22-cv-115-TPB-PRL

**FNU AYERS, FNU KITCHEN, FNU PERKINS, FNU MOREY, FNU KIRKENALL and BRYAN ANTONELLI,**

    **Defendants.**

___

## REPORT AND RECOMMENDATION[1]

Plaintiff brought this action on behalf of the estate of his deceased son, Davon Gillians, who was a federal inmate at the United States Penitentiary Coleman ("USP Coleman"). Plaintiff alleges, pursuant to *Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1972), that Defendants—correctional officers and the Warden—violated Gillians' Eighth Amendment rights. The defendants have each filed motions to dismiss (Docs. 34, 35, 36, 37, 38, 40), and argue that Plaintiff's Amended Complaint is due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. The availability of a cause of action against federal officials in their individual capacities for violations of federal constitutional rights was established in *Bivens*, 403 U.S. at 394-97. *Bivens* claims can be brought against federal officers in their individual capacities only; they do not apply to federal officers acting in their official capacities. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). 11th Cir. R. 3-1.

cognizable claim under *Bivens*. I agree and respectfully submit that Defendants' motions to dismiss should be granted.

## I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (citation omitted). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Moreover, the Court may dismiss a claim when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *See Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## II. Amended Complaint

As noted, Plaintiff brings this action on behalf of the estate of his deceased son, Davon Gillians, who was a federal inmate housed at USP Coleman. Gillians suffered from sickle cell disease for which he took daily prescription medication. According to Plaintiff, Defendants were aware of Gillians' medical condition.

Plaintiff's claim arises from a series of events that occurred at USP Coleman between May 16, 2021, and May 19, 2021. Specifically, Plaintiff alleges that on May 16, 2021, for unknown reasons, Defendants Ayers and Morey, along with other officers, physically removed Gillians from his cell and handcuffed him with his hands behind his back. Then,

despite Gillians' compliance, Defendant Ayers physically assaulted him, causing him to briefly lose consciousness. Defendant Ayers and other unknown officers then strapped Gillians in a restraint chair where he remained in solitary confinement for 24–48 hours, during which he was not provided food, water, or medication. Plaintiff alleges that officers at Coleman frequently use a restraint chair as a form of punishment in a manner that constitutes a violation of the inmates' Eighth Amendment rights and (as alleged) the custom and practice is to withhold food, water, medication, and medical attention from the restrained inmate.

On the evening of May 18, 2021, it is alleged that as a punitive measure Defendants Ayers, Kitchen, Morey, Bostic, and Kirkenall removed Gillians from the restraint chair and deliberately placed him in a cell with an inmate known as "Cleveland," who had mental health issues and a propensity for violence. Plaintiff further alleges that it was custom and practice at USP Coleman for officers to place inmates in particular cells for the purposes of inciting violence as a form of punishment. Almost immediately, inmate Cleveland began fighting with Gillians, but the officers allowed the fight to continue for several minutes. When they intervened, Defendants Kitchen, Morey, Bostic, and Kirkenall used large amounts of pepper spray in efforts to extract both inmates from the cell. While Cleveland was removed, Gillians was unable to exit the cell under his own will and had to be lifted by his arms and legs out of the cell. Plaintiff claims that although Gillians was in clear medical distress, Defendants Bostic, Kitchen, Morey, and Kirkenall intentionally withheld food, water, medication, and medical attention. They then escorted Gillians back to solitary confinement where he was placed in the restraint chair again. Further, despite his deteriorating condition, it is alleged that he was denied food, water, medication, adequate medical attention, and the use of the bathroom.

Plaintiff alleges that Defendants Ayers and Bostic knew that Gillians was in distress; that his condition was worsening; that he was being denied food, water, medication, and medical attention; and that he had been restrained for a prolonged period.

In the late hours of May 18, 2021, or early May 19, 2021, while still strapped in the restraint chair, Gillians suffered a further decline in medical status and was rushed to the emergency room at Leesburg Hospital where he was pronounced dead. Gillians' death was determined to be "homicide" and the cause of death was identified as a vaso-occlusive crisis complicated by oleoresin capsicum (pepper spray) use and prolonged restraint following an altercation.

The Amended Complaint asserts a separate count as to each of the correctional officer Defendants—Ayers, Perkins, Bostic, Kitchen, Morey, and Kirkenall (Counts I, II, III, IV, V, and VI)—alleging that each defendant violated Gillians' Eighth Amendment rights through their involvement in the events set forth above.

With respect to Defendant Antonelli, the Warden, Plaintiff attempts to impute a form of supervisory liability on him insofar as he alleges that he was aware of, and allowed, various "customs and practices" that violated Gillians' Eighth Amendment Rights. Plaintiff alleges, for example, that Antonelli was "deliberately indifferent" to the use of the restraint chair, including in conjunction with the denial of medical care, as well as the purported practice of punishing inmates by placing them with specific inmates for the purpose of inciting violence.

## III. Discussion

Defendants argue, in similar motions, that Plaintiff's Eighth Amendment claims are not cognizable under *Bivens* after the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).[2]

### A. Official Capacity

As an initial matter, *Bivens* claims can only be brought against federal officers in their individual capacities; they do not apply to federal officers acting in their official capacities. *Vasquez v. Cheatham,* No. 5:21-cv-489-WFJ-PRL, 2021 WL 5826236, at *2 (M.D. Fla. Dec. 8, 2021). Here, several Defendants argue that Plaintiff's claims should be dismissed because he improperly sued Defendants in their official capacity. (Doc. 34 at 7-8; Doc. 35 at 7-8; Doc. 37 at 6-7). Although, Plaintiff does not use the phrase "individual capacity" in his Amended Complaint, he alleges that each Defendant is "liable personally" for actions that he took. (Am. Compl. at ¶¶ 41, 50, 57, 66, 75, 84, 93). Plaintiff also confirms in response to the motions to dismiss that his claims are being brought against all Defendants in their individual capacities, and not in their official capacities. Accordingly, the motions to dismiss filed by Defendant Antonelli (Doc. 34), Defendant Perkins (Doc. 35), and Defendant Morey (Doc. 37) should be denied as moot on this ground, as that relief isn't being sought.

### B. Existence of *Bivens* Remedy

In *Bivens,* the United States Supreme Court recognized an implied right of action for damages against federal officers (sued in their individual capacities) for violations of the Fourth Amendment. 403 U.S. 388 (1972). Since that time, the Court has extended the

---

[2] Alternatively, Defendants invoke qualified immunity and argue that the Amended Complaint does not allege sufficient facts to state a claim for an Eighth Amendment violation. Based on my conclusion that this action is not viable under *Bivens*, I decline to address that argument.

*Bivens* remedy in only two other contexts: a Fifth Amendment equal protection claim for sex discrimination in employment, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); and an Eighth Amendment claim against federal prison officials for failure to provide medical treatment, *Carlson v. Green*, 446 U.S. 14, 19-23 (1980). These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Supreme Court has allowed an implied damages remedy under the Constitution itself. *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) (internal citations modified).

In *Ziglar v. Abassi,* the Supreme Court recently clarified how courts should proceed when asked to recognize a *Bivens* remedy. 582 U.S. 120 (2017). The Supreme Court explained that since *Bivens*, *Davis*, and *Carlson* had been decided, the Court had "adopted a far more cautious course before finding implied causes of action." *Id.* at 132. The Court emphasized that it has consistently refused to extend *Bivens* to any new context and that expanding the *Bivens* remedy is now a "'disfavored' judicial activity." *Id*. at 135 (internal quotation marks and citation omitted). The Court explained that expanding the *Bivens* remedy implicates separation-of-powers concerns and that, in most cases, Congress should decide whether to provide a remedy. *Id.* at 133-35.

When confronted with a purported *Bivens* claim, a court must first ask whether the claim arises in a new context—that is, whether the case is different in a meaningful way from previous cases (*Bivens*, *Davis*, and *Carlson*) decided by the Supreme Court that recognized an implied cause of action against an individual federal officer. *Id.* at 139. The Supreme Court cautioned that when doing so a court should keep in mind that "even a modest extension is still an extension." *Id*. at 147. Indeed, in *Berry v. Bureau of Prisons*, No. 5:20-cv-424-KKM-PRL, 2021 WL 4166181, at *3 (M.D. Fla. July 27, 2021) (Mizelle, J.), this court recently

recognized that a plaintiff's alleged Fifth Amendment due process claim related to the taking of his personal property by correctional officers was "distinct from the gender discrimination claim arising under the Fifth Amendment in *Passman*" and not actionable. And, more similarly and more recently, in *Crocker v. USP 1 Coleman*, No. 5:20-cv-568-CEM-PRL, 2022 WL 272173, at *1 (M.D. Fla. Jan. 6, 2022) (Mendoza, J.), *appeal dismissed*, No. 22-10279-A, 2022 WL 1299087 (11th Cir. Feb. 18, 2022), the court declined to extend *Bivens* to include an Eighth Amendment claim against a federal correctional official for excessive force, finding the nature and scope of the conduct alleged meaningfully different from *Carlson*.

In determining whether the claim sought would be an extension, the Court in *Ziglar* looked at the precise nature of the claim (i.e., "respondent's detention policy claims challenge the confinement conditions of illegal aliens pursuant to high-level executive policy created in the wake of a major terrorist attack on American soil," *Ziglar*, 582 U.S. at 140), and compared it to the three prior claims that the Court previously approved, finding that the current claim bore "little resemblance to the three *Bivens* claims the Court has approved in the past: a claim against FBI agents for handcuffing a man in his home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Id.* (citations omitted). The Court, in *Ziglar*, did not authorize an extension of *Bivens*.

The Court revisited this analysis last year in *Egbert v. Boule*, 142 S. Ct. 1793 (2022). In *Egbert*, Boule sued a federal agent in his individual capacity under *Bivens*, "alleging a Fourth Amendment violation for excessive use of force and a First Amendment violation for unlawful retaliation." 142 S. Ct. at 1802. In terms of extending *Bivens* to a First Amendment claim, which none of the three prior cases involved, the Court noted that—stating, "we have

never held that *Bivens* extends to First Amendment Claims"—and expressly confirmed that "[n]ow presented with the question whether to extend *Bivens* to this context, we hold that there is no *Bivens* action for First Amendment retaliation." *Id*. at 1807.

Before addressing that, though, it also distinguished the closer question involving the plaintiff's Fourth Amendment claim, which is the same Amendment *Bivens* was brought under, but found that Boule's claim under that Amendment would have been an unwarranted extension of *Bivens*. Specifically, the Court stated that while *Bivens* and *Egbert* "do involve similar allegations of excessive force and thus arguably present 'almost parallel circumstances' or a similar 'mechanism of injury,' these superficial similarities are not enough to support the judicial creation of a cause of action." *Id*. at 1805. *Egbert*, unlike *Bivens*, involved a national-security context and claims against a Border Patrol agent.

The Court explained that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson*, unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law," which the plaintiff failed to do. *Id*. at 1809. That framework involves the "special-factors inquiry—which *Bivens* never meaningfully undertook." *Id.* at 1805.

The case law clearly requires that if the case presents a new context, the court must then determine whether there are any special factors that counsel hesitation about grating the extension—that is, allowing an implied cause of action as an extension of *Bivens*. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). "If there are—that is, if we have reason to pause before applying *Bivens* in a new context or to a new class of defendants—we reject the request." *Id.* While there is not an exhaustive list of factors that may provide a reason not to extend *Bivens*, the Supreme Court has explained that "'central to [this] analysis' are 'separation-of-powers

principles.'" *Id.* Thus, the court considers the risk of interfering with the authority of the other branches and asks whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," and "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* (quoting [*Ziglar v.*] *Abassi*, 582 U.S. at 139).

In *Egbert*, the Court further explained that "[t]he *Bivens* inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action." *Egbert*, 142 S. Ct. at 1805. Rather, the Court said, "[a] court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1806. Given this total framework, it is difficult to conceive of a case where a *Bivens* extension would be authorized, which is likely why, as here, plaintiffs try to fit their usually distinct or unique circumstances into one of the three existing cases. In light of the cases discussed, that is a difficult task.

1. **New context**

Here, Plaintiff asserts his claims against each of the defendants under the Eighth Amendment. While the Supreme Court has stated in *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), that "the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners," and that they have a duty to provide "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care," the Supreme Court has permitted only one *Bivens* claim for prisoner mistreatment—namely, an Eighth Amendment claim were federal prison officials were deliberately indifferent to an asthmatic inmate's medical needs, *Carlson v. Green*, 446

U.S. 14 (1980).[3] The Supreme Court has never expressly held that *Bivens* extends to Eighth Amendment excessive force or unsafe conditions of confinement claims. *See Ziglar*, 582 U.S. at 130-31 (addressing the only three cases where a *Bivens* claim has been recognized or implied).[4]

Accordingly, here, in an effort to fit within the *Carlson* context, Plaintiff characterizes his claim as one for the deprivation of adequate medical treatment.[5] However, a review of the Amended Complaint reveals that the alleged Eighth Amendment violations go well beyond a claim for deliberate indifference to medical needs and encompass allegations of unsafe conditions of confinement and excessive force, which have not been recognized as implied claims under *Bivens* by the Supreme Court. Nor has the Supreme Court recognized a claim where the need for the medical care is created by the use of excessive force, as alleged here.

---

[3] The Supreme Court summarized the allegations in *Carlson* as follows:
> More specifically, respondent alleged that petitioners, being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of Jones' chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that Jones' death resulted from these acts and omissions, that petitioners were deliberately indifferent to Jones' serious medical needs, and that their indifference was in part attributable to racial prejudice.

*Carlson*, 446 U.S. at 16 & n.1.

[4] As a sister court correctly noted: "The Supreme Court's omission of *Farmer* from the list of recognized *Bivens* contexts is unsurprising because *Farmer* did not address the question of whether a *Bivens* remedy should be implied under the Constitution;" rather, "*Farmer* merely 'defined the term deliberate indifference' for purposes of an Eighth Amendment claim." *Johnson v. Santiago*, 624 F. Supp. 3d 295, 300 (E.D.N.Y. 2022) (citations omitted).

[5] The parties appear to agree that of the three cases, only *Carlson* is relevant since *Bivens* and *Davis* both addressed other constitutional amendments.

As the Court did in *Ziglar* and *Egbert*, when we compare the claim alleged, with the case it is being compared to (here, *Carlson*), we can see that an expansion of *Bivens* (or, more specifically, *Carlson*) is being sought.

This case is not one where the plaintiff was alleged to be housed at a facility with inadequate medical care despite his known medical condition and against the advice of doctors, provided inadequate medical care after an asthmatic attack, administered contra-indicated medication for his asthma attack, provided an inoperative respirator that impeded his breathing during an asthma attack, and not timely transferred to an outside hospital despite his asthma attack. *Carlson*, 446 U.S. at 16 & n.1. Rather, this is a case (unlike *Carlson*) where the plaintiff alleges that the defendants (either directly or by failing to prevent) used excessive force on Gillians on more than one occasion; unlawfully restrained Gillians as part of that use of excessive force; punitively placed Gillians in a cell with a combative inmate, causing him to be beaten; and that both during these acts and after them failed to provide adequate medical care.[6] By alleging that the defendants used, failed to prevent, or allowed to

---

[6] Specifically, as to Officer Ayers (Am. Compl. at ¶¶ 40-48), Plaintiff alleges he intentionally placed Gillians in the restraint chair for a dangerous and prolonged period despite his medical condition and injuries; withheld the provision of adequate water, food, hygiene, and medical attention; and, despite knowing that other officers had intentionally placed Gillians in a cell with another inmate known to have mental health problems and a propensity for violence as a punitive measure, and intentionally used excessive amounts of pepper spray on Gillians and physically beat him, Ayers withheld food, water, medication, and medical attention as a further punitive measure.

As to Officer Perkins (Am. Compl. at ¶¶ 49-55), he alleges Perkins intentionally placed Gillians in the restraint chair, or otherwise failed to intervene as others placed him in the restraint chair for a dangerous and prolonged period and despite his medical condition and injuries; and intentionally withheld (or failed to intervene as others withheld) the provision of adequate water, food, hygiene, and medical attention.

As to Officers Bostic, Kitchen, Morey, and Kirkenall (Am. Compl. at ¶¶ 56-64, 65-73, 74-82, 83-91), Plaintiff alleges that they each intentionally placed Gillians in a cell with an inmate known to have a mental health issue and propensity for violence as a punitive measure; intentionally used excessive amounts of pepper spray on Gillians and physically beat him; intentionally placed Gillians in the restraint chair or failed to intervene as others placed him in the restraint chair for a dangerous and prolonged period and despite his medical condition and injuries; and intentionally withheld (or

be used, excessive force despite knowledge of his medical condition, and that after the use of that force (either by them or the other inmate) failed to provide medical care despite his medical condition, Plaintiff cannot make this use of force case a *Carlson*-Eighth Amendment claim for deliberate indifference to a medical need. Doing so, given the totality of the facts presented, especially in light of the analysis in *Ziglar* and *Egbert*, would certainly be an expansion of *Bivens*. Indeed, the nature and circumstances of the claims here bear little resemblance to *Carlson* except for the superficial similarity that at some point medical care was needed.

In other words, these allegations of Eighth Amendment violations are different in a meaningful way from the claim in *Carlson*, which was against prison officials solely for failure to treat an inmate's asthma. Indeed, in response to the motions to dismiss, Plaintiff concedes that the Amended Complaint includes allegations of unsafe conditions and use of excessive force and clarifies his theory that Defendants' "improper" actions "helped create the very medical emergency that they ignored and deprived Mr. Gillians of necessary medical attention." (*See, e.g.*, Doc. 42 at 6 & n.3; Doc. 43 at 6 & n.3). The Supreme Court has made it clear, however, that "even a modest extension [of *Bivens*] is still an extension," *Ziglar*, 582

---

failed to intervene as others withheld) the provision of adequate water, food, hygiene, medication and medical attention.

And lastly, as to Warden Antonelli (Am. Compl. at ¶¶ 92-101), Plaintiff alleges that he failed to stop the custom or practice of disciplining and punishing inmates at Coleman by placing them with other inmates for the sole purpose of inciting violence; failing to stop the custom or practice of Coleman officers of disciplining and punishing inmates by utilizing restraint chairs in inhumane ways including the prolonged, dangerous, and unreasonable lengths of time; failing to remedy the policies, practices and/or customs of the Coleman officers which resulted in Gillians being placed in a cell with an inmate known to be prone to violence and mental health episodes, being beaten, and being placed in the restraint chair for a prolonged, dangerous, and unreasonable length of time; and failing to remedy the policies, practices, and/or customs of the Coleman officers of withholding food, water, medication, and use of the bathroom from inmates placed in the restraint chair for prolonged, dangerous, and unreasonable lengths of time.

U.S. at 147, and that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743.

While two cases in this district, decided before *Egbert*, allowed Eighth Amendment use of force claims against federal correctional officers to proceed, *see Cauthen v. Blackmon*, No. 5:20-CV-371-BJD-PRL, 2022 WL 952733, at *3 (M.D. Fla. Mar. 30, 2022), *reconsideration denied*, No. 5:20-CV-371-BJD-PRL, 2023 WL 2771316 (M.D. Fla. Apr. 4, 2023) (Davis, J.), and *Rivera v. Lebron et al.*, 5:20-cv-317 (M.D. Fla. October 28, 2021), others have not and the case law continues to support no extension of *Bivens*. *See, e.g.*, *Crocker v. USP 1 Coleman*, No. 5:20-cv-568-CEM-PRL, 2022 WL 272173, at *1 (M.D. Fla. Jan. 6, 2022) (Mendoza, J.), *appeal dismissed*, No. 22-10279-A, 2022 WL 1299087 (11th Cir. Feb. 18, 2022); *Taylor v. Lockett*, No. 5:17-cv-23-OC-02PRL, 2019 WL 764023, at *7 (M.D. Fla. Feb. 21, 2019) (Jung, J.) ("Although the Supreme Court extended the *Bivens* remedy to an Eighth Amendment claim in the context of a claim based on the failure to provide adequate medical treatment in *Carlson v. Green*, 446 U.S. at 16, 100 S.Ct. 1468, the facts of Carlson differ meaningfully from the facts of Plaintiff's Eighth Amendment claim; [t]hus, his claim presents a new Bivens context."); *cf. Berry v. Bureau of Prisons*, No. 5:20-cv-424-KKM-PRL, 2021 WL 4166181, at *3 (M.D. Fla. July 27, 2021) (Mizelle, J.).[7] A recent case decided in the Middle District of Pennsylvania captures the initial tension and now current state of the law:

---

[7] *Mammana v. Barben*, 856 F. App'x 411, 415 (3d Cir. 2021) (divided panel held that the plaintiff's claim warrants hesitation because "he asks for a new implied cause of action to sue federal prison officials for unconstitutional conditions of confinement, a step never taken by the Supreme Court nor any circuit court" and that "we must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'") (citations omitted); *Fuquea v. Mosley*, No. 1:19-CV-1392, 2020 WL 3848150, at *5-6 (D.S.C. Mar. 6, 2020) (declining to extend *Bivens* to inmate's Eighth Amendment conditions-of-

> [Plaintiff] contends neither of his *Bivens* theories presents a new context. He points to several post-*Abbasi* cases within the Third Circuit where courts allowed Eighth Amendment conditions-of-confinement and excessive-force claims against federal prison officials to proceed. In the wake of *Abbasi*, there was indeed some dissonance regarding the continued viability of such claims. Initially, defendants did not argue, and courts did not sua sponte consider, whether such claims for damages remained viable. As the dust settles, however, and courts begin to appreciate *Abbasi's* watershed scope, the better-reasoned authority has declined to recognize a *Bivens* remedy for Eighth Amendment conditions-of-confinement and excessive-force claims.

*Hill v. Lappin*, 561 F. Supp. 3d 481, 487 (M.D. Penn. June 2, 2021).

Accordingly, I submit that Plaintiff's case involves a new context which would require an extension of *Bivens*.

### 2. Special factors counsel hesitation

Because this case involves a new context, the Court must consider whether special factors counsel against recognizing a new *Bivens* remedy. I submit that they do. As discussed above, the Supreme Court has never held that *Bivens* extends to Eighth Amendment excessive force or unsafe conditions of confinement claims and the Court has stressed that any extension of *Bivens* to new factual scenarios is now a "disfavored judicial activity." For the reasons discussed below, I submit that there are special factors weighing against such an extension in

---

confinement), *report and recommendation adopted*, 2020 WL 1899493 (Apr. 16, 2020); *Brown v. Nash*, No. 3:18-CV-528, 2019 WL 7562785, at *4-6 (S.D. Miss. Dec. 13, 2019) (concluding that *Bivens* did not extend to inmate's Eighth Amendment claim of excessive force), *report and recommendation adopted*, 2020 WL 129101 (Jan. 10, 2020); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169-70 (E.D. Cal. Oct. 1, 2018) (declining to extend *Bivens* to inmate's Eighth Amendment claim of excessive force); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 65 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) ("As to the medical claims, plaintiff comes somewhat closer to the ambit covered by *Carlson*; however, the facts are again so dissimilar such that the context is new, which requires me to conduct an alternative-remedies and special-factors analysis [and i]n doing so, I once again find that a *Bivens* remedy is inappropriate.").

this case, and thus, the court should decline to create an implied damages remedy for Plaintiff's Eighth Amendment claims here.

Given the Court's language related to what constitutes a factor that warrants hesitation, it is difficult to conceive of a claim that would warrant an extension, particularly under the Court's recent cases. For example, in *Egbert v. Boule*, the Court said that "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" 142 S. Ct. at 1803 (quoting *Hernandez*, 140 S. Ct. 750). The Court further explained that "[i]f there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Id.* (citation omitted). In fact, the Court also broadly said that when considering a factor that counsels hesitation, "[e]ven in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*," and that "[t]hat uncertainly alone is a special factor that forecloses relief." *Egbert*, 142 S. Ct. at 1803-04. On these two related factors, the Court has hesitation: allowing a damages claim for use of force under the Eighth Amendment is certainly well within the realm of Congress, as Congress generally is the creator of private rights of action, and creating a judicial remedy in the absence of Congressional action would certainly have systemwide consequences that are hard to fully predict.

A further, and also related, factor counseling hesitation is legislative action suggesting that Congress does not want a damages remedy. *Ziglar,* 582 U.S. at 148. Specifically, as noted by the Supreme Court in *Ziglar v. Abbasi*:

> Some 15 years after *Carlson* [*v. Green*] was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion requirements would apply to *Bivens* suits.

> But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at 148-49 (internal citations omitted).

Indeed, as other courts have recognized, Congress has been active in prisoner's rights and has not created a damages remedy against individual officers. This causes the Court to hesitate and it further cuts against extending the *Bivens* remedy to Plaintiff's case. *See, e.g.*, *Berry v. Bureau of Prisons*, No. 5:20-cv-424-KKM-PRL, 2021 WL 4166181, at *3 (M.D. Fla. July 27, 2021) (explaining that the choice by Congress to not create a damages remedy for cases like this one "forecloses this Court from taking it upon itself to legislate monetary damages for constitutional claims where the legislative branch elected not to do so"); *Dugan v. Scott*, No. 5:13-cv-235-Oc-32PRL, 2019 WL 4737609, at *5 (M.D. Fla. Sept. 27, 2019) ("Given Congress's active role in the area of prisoner rights, this factor causes the Court to 'hesitate' and weighs against extending *Bivens* remedy in this case"); *McRae v. Lockett*, No. 5:17-cv-299-Oc-02PRL, 2019 WL 2303264, at *6 (May 30, 2019) ("While Congress's failure to create a damages remedy is not definitive, the fact remains that Congress has been active in the area of prisoners' rights and has not created a damages remedy.").

Also counseling restraint (and related to the systemwide implications factor discussed above) is that prison-based claims present a risk of interference with prison administration. *See Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020). As the Supreme Court has noted, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources" and those tasks fall "peculiarly within the province of the legislative and executive branches." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). And "[g]iven the array of challenges facing prison administration and the

complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,'—counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id*. at 524 (citations omitted); *see also Montalban v. FNU Boley*, No. 5:16-cv-405-Oc-60PRL, 2021 WL 252339, at *16 (M.D. Fla. Jan. 26, 2021) ("courts have historically exercised judicial restraint in cases implicating prison administration"); *Landis v. Moyer*, 610 F. Supp. 3d 649, 660 (M.D. Pa. 2022) (declining to extend *Bivens* to Landis's Eighth Amendment excessive-force claim and stating that because "such claims squarely implicate BOP policy and are 'inextricably tied to the preservation of institutional rules and order,'" any expansion warrants hesitation).

Lastly, despite language in *Carlson* to the contrary (*see* 446 U.S. at 19), recent language in the Supreme Court's decisions, as discussed by a sister court in *Johnson v. Santiago*, 624 F. Supp. 3d. at 302-03, suggests that Congress has provided an alternative, even if not equally effective, remedy in the Federal Tort Claims Act ("FTCA"). As stated in *Johnson*:

> In [*Ziglar v.*] *Abbasi*, for example, the Court explained that "if Congress has created *any* alternative, existing process for protecting the injured party's interest[,] that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." 137 S. Ct. at 1858 (emphasis added; quotations and citation omitted). And in [*Egbert v.*] *Boule*, the Court reiterated that "[i]f there are alternative remedial structures in place, that alone ... is reason enough" not to extend *Bivens*, even if those "existing remedies do not provide complete relief." 142 S. Ct. at 1804 (quotations and citations omitted); *see also Hernandez*, 140 S. Ct. at 748 & n.9 (explaining that the FTCA is "the exclusive remedy for most claims against Government employees arising out of their official conduct," and that the passage of the FTCA "simply left *Bivens* where it found it" (citation omitted)). Accordingly, "[i]n light of the Supreme Court's language" in *Abbasi*, *Hernandez*, and *Boule*, "the Court finds that the FTCA is an alternative remedy" that precludes a *Bivens* claim.

*Johnson v. Santiago*, 624 F. Supp. 3d at 302-03. Thus, a claim against the United States under the Federal Tort Claims Act, while distinct from individual damages claims against the

involved officers, would provide an available remedy to address the wrongs that allegedly occurred. *Crocker v. USP 1 Coleman*, No. 5:20-CV-568-CEM-PRL, 2022 WL 272173, at *5 (M.D. Fla. Jan. 6, 2022) (Mendoza, J.), *appeal dismissed*, No. 22-10279-A, 2022 WL 1299087 (11th Cir. Feb. 18, 2022) (finding that in light of *Ziglar*, the FTCA, while not providing a way to redress everything a plaintiff seeks, is an alternative remedy that counsel hesitation).

## IV. Recommendation

Accordingly, I submit that *Bivens* does not extend to the facts of this case, and that Plaintiff lacks a cause of action. Because Plaintiff's allegations fail to state a claim upon which relief may be granted, the motions to dismiss should be granted and the Amended Complaint should be dismissed in its entirety.

Recommended in Ocala, Florida on July 20, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy